## SCOTT *v.* PLUMMER.

1. INJUNCTION—BURDEN OF PROOF.
   Plaintiffs, seeking to enjoin defendants from cutting timber on land claimed by both parties, had burden of establishing their case.

---

On injunction to restrain cutting timber generally, see annotation in 22 L. R. A. 233; 43 L. R. A. (N. S.) 262; L. R. A. 1917C, 236.

2. ADVERSE POSSESSION—INJUNCTION—CUTTING TIMBER.
    In proceedings to enjoin defendants from cutting timber on land
    claimed by both parties, one of defendants on cross-bill *held*,
    properly decreed to be owner of land in controversy under evi-
    dence showing adverse possession for more than 20 years.

Appeal from Lapeer; Smith (Henry H.), J. Sub-
mitted October 16, 1931. (Docket No. 139, Calendar
No. 35,997.) Decided January 4, 1932.

Bill by Steve Scott and another against Mabel
Plummer and another to enjoin timber cutting on
certain land. Cross-bill by defendant Plummer
against plaintiffs praying to be decreed owner of
land. Decree for defendant. Plaintiffs appeal.
Affirmed.

*Herbert W. Smith* and *Kenneth H. Smith*, for
plaintiffs.

*Glen Smith*, for defendant Plummer.

NORTH, J. Plaintiffs, claiming to be the owners
of a parcel of land located on the northeast quarter
of the southwest fractional quarter of section six,
of Elba township, Lapeer county, sought to have
the defendants restrained from cutting or removing
timber from said parcel and also asked the court to
decree that neither of said defendants had any right,
title, or interest in or to said land. The defendant
Mabel Plummer, also claiming to be the owner of
this parcel, denied in her answer that plaintiffs were
entitled to the relief sought, and by cross-bill asked
that she be decreed to be the owner. The defendant
Leach is alleged to have been engaged in removing
timber from the premises under an arrangement
with Mrs. Plummer. After hearing in open court,
the trial judge entered a decree dismissing complain-
ants' bill of complaint, and granted defendant the

relief sought in her cross-bill. Plaintiffs have appealed.

We think it fair to infer from the record that because the west half of section six is fractional, and also because of some inaccurate descriptions and erroneous recitals of the quantity of land sought to be conveyed in the transfers of certain parcels located on this half section, some considerable uncertainty and conflict has arisen. However, it appears from this record that for many years there has been an established line marked by a fence located upon the boundary on the westerly side of the parcel in dispute, between it and plaintiffs' land to the west. A witness who 30 years ago helped to build this fence testified that the work was done for Charles Croff, one of the predecessors in title of Mrs. Plummer. This boundary was not only established but recognized by the predecessors in title of each of these parties. A rather persuasive circumstance disclosed by the testimony is that after plaintiffs had purchased the property they now own they became convinced that it contained less acreage than was called for in their grantors' deed. They employed Mr. Frank Sicklesteel to survey their land for the purpose of ascertaining the actual number of acres. Incident to this survey, Mr. Scott pointed out to Mr. Sicklesteel as the easterly boundary line of that portion of his farm the identical line which Mrs. Plummer now claims is the boundary line. Mr. and Mrs. Scott, claiming a shortage of acreage, sued their grantors and recovered $1,400 damages.

There are no buildings upon the parcel here involved. The land for the most part is low, but portions of it are covered with timber. Mrs. Plummer claims that for upwards of 20 years she and her predecessors in title and their employees have cut wood upon this land; that they have had access thereto by crossing the land of plaintiffs and their

predecessors in title; and that all this has been done with plaintiffs' knowledge since they purchased in 1912. These claims on the part of Mrs. Plummer are denied by plaintiffs' testimony. While there is a larger acreage in the parcel in controversy than is indicated in an exception contained in the description in the deed under which plaintiffs hold, nonetheless we think the exception was intended to cover the identical land. Some of the tax receipts produced refer to the parcel as containing 10 acres, others as 20 acres. The surveyor sworn in behalf of plaintiffs fixed it at 15.27 acres. The exception in plaintiffs' deed reads as follows: "Also except that part of northeast quarter of southwest quarter of said section lying north and east of outlet of Potter Lake and containing about seven acres." The original conveyances of this parcel came from a common grantor in chain of title under which both the plaintiffs and Mrs. Plummer hold. The deed is dated March 10, 1887, and describes the land in dispute as "all of that part of the northeast quarter of the southwest quarter lying north and east of Potter Lake of said section six, town seven north, range nine east." This is the description in the deed to Mrs. Plummer.

Obviously there is inexcusable uncertainty and inaccuracy in the conveyances affecting the title to the disputed parcel. Also there is much direct conflict in the testimony of Mr. Scott, and he is contradicted by disinterested witnesses. Primarily plaintiffs had the burden of establishing their case. Evidently the circuit judge found they had failed in so doing. He was right in his determination, and we affirm the decree entered in the circuit court, with costs to appellees.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.